UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICHOLE W.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5701 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Dkt. 16. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 39 years old, has at least a high school education, and has worked as a customer service clerk/stock clerk and as a retail store manager. Dkt. 13, Admin. Record (AR) 34. Plaintiff applied for benefits in May 2014, alleging disability as of June 9, 2007. AR 97. Plaintiff's application was denied initially and on reconsideration. AR 92, 107. After the ALJ conducted a hearing in September 2016, the ALJ issued a decision finding Plaintiff not disabled. AR 41, 25-36.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the May 2014 application date.

**Step two:** Plaintiff has the following severe impairments: radiculopathy, migraine headaches, and perineural cyst.

**Step three:** Plaintiff's impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, standing and walking two hours per day and sitting six hours per day. She can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. She can frequently balance and can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and stairs. She can have no exposure to vibration, extreme cold or heat, or concentrated airborne irritants. She can have moderate exposure to noise.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 27-36. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 7.[3]

## DISCUSSION

Plaintiff asks the Court to reverse the ALJ's decision. Dkt. 14. The Court may reverse the ALJ's decision finding a person not disabled "only if it is not supported by substantial evidence or is based on legal error." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The Court cannot make its own findings, but must

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE
- 2

consider the entire record as a whole in determining whether the Commissioner's conclusions have a reasonable basis. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Additionally, where a party proceeds pro se, the Court must construe the allegations of the pleading liberally and afford her the benefit of any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc). This Court may not reverse an ALJ's decision because of an error that is "harmless," *i.e.*, "inconsequential to the ultimate disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

**A.     Mental Impairments**

The ALJ found that Plaintiff's anxiety and depression were nonsevere because Plaintiff improved with treatment. AR 27. Plaintiff acknowledges that "depression … was not something that prevented [her] from working." Dkt. 16 at 15. She contends, however, that she is "still having issues" with panic attacks. Dkt. 16 at 7.

Evidence that medical treatment helped a claimant "'return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders' … can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (2014)). The ALJ relied on Plaintiff's report to her treating provider that her "[a]nxiety and depression [were] pretty well controlled" in October 2014, and on the opinions of examining doctor John Adler, Ph.D., that Plaintiff had normal capabilities in activities of daily living, social functioning, and concentration. AR 1424; AR 1083. This was substantial evidence supporting the ALJ's findings that treatment returned Plaintiff to a level of function close to normal.

Plaintiff argues Dr. Adler's opinions should be rejected because he only examined her one time and her "treating mental health professionals have a better understanding of" her mental

health impairments. Dkt. 16 at 17, 6. A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). However, when a treating doctor's and an examining doctor's opinions conflict, the ALJ may accept one and reject the other by giving "specific and legitimate" reasons. *Id.*

Plaintiff does not identify any treating provider's opinions of her mental health, and none are apparent from the record. At a February 2014 Intake Assessment from Community Services Northwest, a thorough mental status examination revealed entirely normal results except for restless motor activity. AR 966. Plaintiff had normal appearance, behavior, mood, affect, stream of mental activity, thought content, memory, attention and concentration, comprehension and fund of general knowledge, insight, judgment, and intelligence. *Id.* These findings are consistent with Dr. Adler's findings and support rather than contradict his opinions.

The Court concludes the ALJ did not err by finding Plaintiff's mental impairments nonsevere.

**B.    Plaintiff's Symptom Testimony**

Plaintiff testified that she stopped working in June 2007 because of continuous pain in her lower back, legs and feet. AR 48. Moving her arms frequently induces the back and leg pain. AR 57. She can lift 20 pounds maximum on a normal day and 10 pounds on a bad day. AR 50. She can only walk one block, stand 10 minutes, or sit 10 minutes before needing to rest. AR 49. She gets daily headaches that last two to eight hours. AR 49-50. She gets 20-minute panic attacks three or four times a month, or when she has appointments or is around more than 10 people. AR 51. She takes daily naps lasting one or two hours. AR 52. Mood swings make it difficult to get along with other people. AR 52-53. Pain makes it difficult to focus. AR 53.

Where, as here, an ALJ finds the claimant's impairments could reasonably be expected to

cause her symptoms and there is no affirmative evidence of malingering, the ALJ can only reject the claimant's symptom testimony for specific, clear and convincing reasons supported by substantial evidence. *Garrison*, 759 F.3d at 1014-15. The ALJ discounted Plaintiff's testimony as contradicted by her activities, conservative treatment, and minimal objective clinical findings. AR 31-32. Plaintiff does not challenge the objective findings basis, but in any case "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### 1. Activities

An ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ cited activities of caring for three children ages 6 to 16, cleaning, cooking, laundry, driving, shopping, handling finances, part-time babysitting work throughout 2010, and completing a four-year degree in 2012. AR 31, 28.

Plaintiff argues that the part-time work caring for a 5-year-old does not reach the level of substantial gainful activity, and involved "no physical activity other than driving … less than 10 miles a day." Dkt. 18 at 1-2. However, regardless of the earnings, babysitting two to six hours per day contradicts Plaintiff's testimony of incapacitating pain. Daily headaches lasting up to eight hours, needing daily one- to two-hour naps, being unable to sit or stand for more than 10 minutes, and being unable to move her arms frequently would, taken together, make it difficult if not impossible to care for a 5-year-old. The ALJ permissibly inferred that taking care of a 5-year-old for up to six hours at a time required physical activity. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Plaintiff's babysitting activity

provided a clear and convincing reason to discount Plaintiff's testimony.

Plaintiff argues that she had accommodations for her back issues in order to complete her four-year degree. Dkt. 16 at 10; Dkt. 18 at 2. However, the ability to complete a four-year degree, even in five years, indicates a better ability to concentrate than Plaintiff testified she had. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (upholding rejection of doctor's opinion that claimant had "difficulty paying attention, concentrating, and organizing herself" because it did not prevent her from obtaining a college degree).

Plaintiff argues that her daily household activities do not contradict her testimony because she does them "with severe pain" and only for "a very short period of time." Dkt. 16 at 3. In addition, her children are largely self-sufficient. Dkt. 16 at 4. But Plaintiff reported that she grocery shops once or twice a month for "3-4 hours," contradicting her testimony that she cannot stand for more than 10 minutes at a time. AR 233. If childcare and housework were erroneous reasons to discount Plaintiff's testimony, the error was harmless because the ALJ provided several other clear and convincing reasons. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'").

The ALJ did not err by discounting Plaintiff's testimony based on her activities.

**2.  Conservative Treatment**

Plaintiff acknowledges that she avoids pain medications. Dkt. 18 at 3[4]; AR 31. An

---

[4] Plaintiff also offers reasons why she avoided antidepressant medications. Dkt. 16 at 2. The Court need not address this issue, however, because the ALJ did not rely on that as a reason to discount her testimony.

"unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 679-80 (9th Cir. 2017). Plaintiff states in her reply brief that she "refuses to take medications that make her feel weird in the head and prevent her from leading as normal a life as possible." Dkt. 18 at 3.[5] The record available to the ALJ reflects that Plaintiff told her treating doctor in 2015 that she was "not big on medications" and "would rather live with the pain than take lots of medications." AR 1370. Although other interpretations of the record are possible, the Court must uphold the ALJ's rational interpretation that Plaintiff's avoidance of medication indicated that her pain was not incapacitating. *See Burch*, 400 F.3d 676, 680-81 (when the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational).

Because the ALJ provided the clear and convincing reasons of conflict with activities as well as conservative treatment, the Court concludes the ALJ did not err by discounting Plaintiff's symptom testimony.

## C.     Heather Nash, F.N.P.-C.

Plaintiff argues that Ms. Nash's opinions should have been given "significant weight" because she treated Plaintiff for several years. Dkt. 18 at 5. The ALJ gave Ms. Nash's opinions "partial weight," accepting her lifting limits but rejecting the limit to sitting four hours per day. AR 33. The ALJ found that Ms. Nash herself acknowledged that the opined limits were based on Plaintiff's self-reports, not objective medical evidence. AR 33. The ALJ was permitted to

---

[5] This Court cannot make its own findings. *Connett*, 340 F.3d at 874 ("we cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts."). Accordingly, the Court does not rely on any assertions made in briefing and not found in the record available to the ALJ.

discount Ms. Nash's opinions for this reason. An ALJ may reject even a treating physician's opinion if it is based largely on a claimant's self-reports that have been properly discounted. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). As discussed above, the ALJ permissibly discounted Plaintiff's self-reports.

The Court concludes the ALJ did not err by discounting Ms. Nash's opinions.

**D.     Elizabeth St. Louis, M.D.**

Plaintiff notes that Dr. St. Louis found she had severe impairments and argues the ALJ erred by "dismiss[ing]" this information. Dkt. 18 at 4. There is no dispute that Plaintiff has severe impairments, including a perineural (or Tarlov) cyst. *See* AR 27. Dr. St. Louis opined that Plaintiff had *less severe* limitations than the ALJ found. For example, she found Plaintiff could stand or walk for six hours per day, while the ALJ limited Plaintiff to two hours per day. *Compare* AR 1148 *with* AR 30. Plaintiff was not prejudiced by the ALJ's discounting of Dr. St. Louis' opinions.

**E.     Listing 1.04**

Plaintiff refers to Listing 1.04, and notes her perineural or Tarlov cyst, but does not show how her impairments meet or medically equal the listing. *See* Dkt. 16 at 10, 11-12, 13, 14. Listing 1.04 requires showing "compromise of a nerve root" along with one of three conditions: "nerve root compression," "spinal arachnoiditis," or "[l]umbar spinal stenosis … resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04. The ALJ found that Plaintiff did not have any of the three conditions. AR 29-30. Plaintiff has not shown any error. The Court concludes the ALJ did not err by finding Plaintiff's impairments did not meet or equal Listing 1.04.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

### F. Frank Feigenbaum, M.D.

Plaintiff refers to "findings" from Dr. Feigenbaum and states that he "reviewed [her] MRI's." Dkt. 16 at 12, 2. The record does not appear to contain any findings or opinions from Dr. Feigenbaum, however. *See* Dkt. 13, Court Transcript Index. Plaintiff's opening brief lists Dr. Feigenbaum's website, but the website reveals nothing about Plaintiff's impairments or limitations. *See* Dkt. 16 at 19. The ALJ did not err by failing to consider evidence that is not to be found anywhere in the record.

### G. Cherrypicking

Plaintiff argues that the ALJ "picked out" the information from the record that supports his conclusion that she is not disabled. Dkt. 18 at 5. An ALJ is required to examine the evidence in context and not simply pick out a few isolated instances of improvement. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). However, as discussed above, the ALJ permissibly discounted Plaintiff's testimony and Ms. Nash's opinions. The remainder of the record, such as Dr. Adler's report and the Community Services Northwest assessment, is consistent with the ALJ's findings. AR 1083, 966; *see also* AR 1594 ("objective findings [for back] have been essentially normal").

### H. Vocational Testimony

At the hearing, the ALJ presented the vocational expert with a hypothetical that included all of the limitations in the RFC. AR 66-67, 68, 74, 76-77. The vocational expert testified that a person with those limitations could perform jobs that existed in significant numbers in the national economy. AR 76-78. The ALJ relied on this testimony to conclude that Plaintiff was not disabled for Social Security purposes. AR 35.

Plaintiff argues that, if her testimony was incorporated into the hypothetical, "then the

finding would have been different." Dkt. 16 at 16. That is true. Plaintiff's attorney asked the vocational expert several alternative hypotheticals, including whether a person who needed to lie down for an hour a day outside of normal breaks could sustain employment. AR 80-81. The vocational expert testified that such a person could not sustain employment. AR 81. However, an ALJ need only include in the RFC limitations that are supported by the record. *Robbins*, 466 F.3d at 886. Here, the ALJ permissibly discounted Plaintiff's testimony, as discussed above, and thus was not required to account for Plaintiff's self-reported limitations. The ALJ included all limitations that were supported by the record in the hypothetical he presented to the vocational expert, and thus was permitted to rely on the expert's response.

The Court concludes the ALJ did not err in relying on the vocational expert's testimony to establish that Plaintiff could perform jobs available in significant numbers in the national economy.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 2nd day of July, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10